UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 6:05-CV-126-KKC

BRITT ANGLIAN and
ROBIN GRUBBS,                                                    PLAINTIFFS,

v.                          **MEMORANDUM, OPINION
AND ORDER**

ALLSTATE INSURANCE COMPANY,                          DEFENDANT.

* * * * * * * * * *

This matter is before the Court on the first Motion for Partial Summary Judgment (Rec. No. 19)  filed by the Defendant, Allstate Insurance Company ("Allstate"), in which Allstate seeks dismissal of the claims made by Britt Anglian ("Anglian"), one of the Plaintiffs in this action; and a second Motion for Partial Summary Judgment by Allstate (Rec. No. 24) in which Allstate seeks dismissal of the bad faith claims against it.

**I.      FACTS.**

Plaintiffs Robin Grubbs ("Grubbs") and her son, Britt Anglian, assert in their Complaint that Grubbs owned a mobile home located in Harlan County, Kentucky and that Grubbs and Anglian both owned certain personal property that was located in the mobile home.  The Plaintiffs further assert that Grubbs purchased an insurance policy in which Allstate agreed to insure the home and its contents.

The mobile home and its contents were destroyed by fire on or about January 2, 2004.  The Plaintiffs assert that Allstate has failed to pay for the loss as required under the policy.  The Plaintiffs appear to assert a breach of contract and bad faith claim against Allstate.  With its first Motion for Partial Summary Judgment, Allstate seeks dismissal of Anglian's claims arguing that he is not an

insured person under the policy.  With its second Motion for Partial Summary Judgment, Allstate seeks dismissal of the bad faith claim arguing that its obligations under the policy are "fairly debatable," and, therefore, it cannot be liable for bad faith under Kentucky law.

## II.   STANDARD ON SUMMARY JUDGMENT.

Under Fed. R. Civ. P. 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim.  *Id.* at 322-25.  Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Rule

56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must view the facts and draw all inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The moving party must show conclusively that there is no genuine issue of material fact. *Id.* However, at the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249). The Court is not to judge the evidence or make findings of fact. *60 Ivy Street Corp.,* 822 F.2d at 1435-36. Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

"The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). "The nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris,* 260 F.3d 654, 665 (6th Cir. 2001).

### III.    FIRST MOTION FOR SUMMARY JUDGMENT.

Again, with its first Motion for Partial Summary Judgment, Allstate argues that Anglian's

claims must be dismissed because he is not insured under the policy.  The policy defines an "insured

person" as, "**you** and, if a resident of **your** household, any relative or any dependant person in **your**

care."  (Rec. No. 19, Mem. Supp. Mot. for Summ. J., Ex. H, Policy at 2).  The terms "you" and

"your" are defined in the policy as "the policyholder named on the declarations page and that

policyholder's resident spouse."  (Id.)  Grubbs is the policy holder named on the declarations page

of the policy.  (Rec. No. 19, Mem. Supp. Mot. for Summ. J., Ex. H, Policy Declarations at 1).

Anglian, Grubbs' son, is a relative of Grubbs.  Thus, in determining whether Anglian is an "insured

person" under the policy, the sole issue is whether he was a resident of Grubbs' household.

In its Motion, Allstate cites to various cases in which Kentucky courts have held that, for

insurance purposes,  the term "household," generally means "persons dwelling together as a family

under the same roof."  *See, Hanover Insurance Co. v. Napier*, 641 S.W.2d 47, 48 (Ky. App. 1982).

*Kentucky Farm Bureau Mutual Insurance Co. v. Gray*, 814 S.W.2d 928, 929 (Ky. App. 1991);

*Sutton v. Shelter Mutual Insurance Co.*, 971 S.W.2d 807, 808 (Ky. App. 1998).

In response, Anglian argues that "household" refers to the insured mobile home. (Rec. No.

21, Response at 3).  Anglian cites to no cases in support of this argument and this court has been

unable to locate any such Kentucky cases.  Thus, in accordance with the cases cited above, the Court

finds that, as a matter of law, the term "household" means "persons dwelling together as a family

under the same roof."

The next issue is whether Anglian was dwelling with Grubbs at the time of the fire.  In their

response to Allstate's motion, the Plaintiffs state that "in his prior statement and as shown by his

4

attached affidavit, [Anglian] has testified that he has lived with his mother, Robin Grubbs, since 2001." (Rec. No. 21, Response at 2). In his affidavit, however, Anglian actually states "he has spent time with his mother when she resided in Corbin, Kentucky since 2001." (Rec. No. 21, Response, Anglian Aff.). In his examination under oath, Anglian stated that he had not seen his mother since the summer of 2003. (Rec. No. 23, Reply, Ex. A., Anglian Test.). Again, the fire occurred in January, 2004. He also testified that he moved into the mobile home about a year and a half before the fire and that one of his good friends lived there with him. (Rec. No. 19, Mem. Supp. Mot. for Summ. J., Ex. G, Anglian Test.). In her examination under oath, Grubbs testified that she had resided in Richmond, Kentucky since August, 2003. (Rec. No. 19, Mem. Supp. Mot. for Summ. J., Ex. B, Grubb. Test.)

Accordingly, the sole evidence in the record is that Anglian did not reside with Grubbs at the time of the fire. Under the terms of the insurance policy, Anglian was therefore not a resident of Grubbs' household at the time of the fire and is not an "insured person" under the terms of the policy. Allstate's first Motion for Partial Summary Judgment will, therefore, be GRANTED.

## IV.   SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT.

In its second Motion for Partial Summary Judgment (Rec. No. 24), Allstate asks the Court to dismiss Grubbs' bad faith claim. Allstate asserts that it denied Grubbs' claim in good faith because it believed that she had made certain material misrepresentations on her application for insurance.

Specifically, on her insurance application, Grubbs stated that she was the only occupant of the mobile home; that she was single; and that she owned the property on which the mobile home sat. (Rec. No. 20, Ex. A). In her sworn examination, however, Grubbs stated that, at the time that

she submitted the insurance application, her then-husband was living in the mobile home and that she was living in Corbin, Kentucky. She also stated that she was married at the time she submitted the application and she did not own the property underlying the mobile home and that her mother-in-law actually owned it.

Grubbs asserts that she did not sign the application and that she did not make the false statements contained in the application. Grubbs asserts that, in fact, she told the Allstate agent who sold her the policy that she did not live in the mobile home and that her husband did, and that she did not own the property underlying the mobile home.

Under KRS § 304.14-110, misrepresentations in an insurance policy application may prevent recovery under the policy if (1) they are fraudulent; (2) they are material to the acceptance of the risk or to the hazard assumed by the insurer; or (3) the insurer in good faith would either not have issued the policy, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Allstate has submitted an affidavit from its underwriting department stating that, had it know the true facts, it would not have issued this insurance policy to Grubbs. (Rec. No. 25, Mem. Supp. Mot. for Summ. J., Ex. G). Allstate argues that, given the misrepresentations in Grubbs' application, Allstate's obligation to pay Grubbs' claim was "fairly debatable" and, thus, under Kentucky law, it cannot be held liable for "bad faith." An insured must prove three elements in order to prevail on a bad faith claim:

(1) the insurer must be obligated to pay the claim under the terms of the policy; (2)

the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed. An insurer is entitled to challenge a claim and litigate it if the claim is debatable on the law or the facts.

*Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (quotations and citation omitted).

Allstate relies on *Empire Fire and Marine Ins. Co. v. Simpsonville Wrecker Service, Inc.*,

880 S.W.2d 886 (Ky. App. 1994) which states:

[I]f a particular claim is 'fairly debatable, the insurer is entitled to debate that claim regardless of whether the debate concerns a matter of fact or one of law. . .[A]n insurer is entitled to challenge a claim which is fairly debatable on the law or the facts. Thus. . . it is clear that for purposes of Kentucky law, a tort claim for a bad faith refusal to pay must first be tested to determine whether the insurer's refusal to pay involved a claim which was fairly debatable as to either the law or the facts. If a genuine dispute does exist as to the status of the law governing the coverage question, the insured's claim is fairly debatable and the tort claim for bad faith based upon the insurer's refusal to pay the claim may not be maintained.

*Id*. at 889-890 (citations omitted.

In *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368 (Ky. 2000), the Kentucky Supreme

Court further explained that *Empire Fire*:

dealt with an insured's right to bring a bad faith case against its insurer when recovery, if any, under the insurance contract was dependent upon a legal issue of first impression in Kentucky courts. There is no such unresolved legal issue here. Moreover, *Empire Fire* does not stand for the proposition. . . that a disputed factual matter requires dismissal of a bad faith claim as a matter of law. Although 'an insurer is. . . entitled to challenge a claim and litigate it if the claim is fairly debatable on the law or the facts,' the existence of jury issues on the contract claim does not preclude the bad faith claim
. . . .
[A]n insurance company still is obligated. . .to investigate, negotiate, and attempt to settle the claim in a fair and reasonable manner. In other words, although elements of a claim may be 'fairly debatable,' an insurer must debate the matter fairly.

*Id*. at 375.

As evidence that it had a reasonable basis for denying Grubbs' claim, Allstate presents the affidavit of Peggy Holland, its former agent who sold the insurance policy to Grubbs. Holland states that she does not remember speaking with Grubbs or assisting her with her application in detail, but that she did not forge Grubbs' signature and that the application was signed by Grubbs. (Rec. No. 32, Holland Aff. ¶ 5). Holland states her normal practice while an Allstate agent was to fill out the application with the information supplied by the customer and then allow the customer to review the application for accuracy and sign the application. (Rec. No. 32, Holland Aff. ¶ 8).[1]

In response, Grubbs presents her own affidavit in which she states that the she did not sign the application. (Rec. No. 26, Response, Grubbs Aff. ¶ 4). Grubbs further states that, at the time she applied for insurance, she told Holland that her husband lived in the mobile home and that Grubbs did not; and that her mother-in-law owned the property underlying the mobile home. (Rec. No. 26, Response, Grubbs Aff. ¶ 7).

The parties agree that expert testimony will help resolve the ultimate issue of whether Grubbs signed the application.[2] The issue for purposes of this motion, however, is not whether Grubbs actually signed the application. Instead, the issue is whether Allstate had a reasonable basis for concluding that Grubbs made the misrepresentations contained in the application. Resolution of this issue depends, in part, on whether Allstate had a reasonable basis for concluding that Grubbs'

---

[1] Allstate's uncontested motion for an extension of time to file Holland's affidavit (Rec. No. 29) will be GRANTED.

[2] After Grubbs filed her response to Allstate's second Motion for Partial Summary Judgment asserting that the signature was forged, Allstate moved for an extension of time to disclose expert witnesses and expert witness reports (Rec. No. 27) stating it would like to retain a handwriting expert regarding this issue. Grubbs filed a similar motion (Rec. No. 30), stating that, if Allstate obtained a handwriting expert, Grubbs would like to retain an expert for rebuttal. After the filing of these motions, the parties submitted an Agreed Order Regarding Enlargement of Time for Disclosure of Expert Witnesses and Reports (Rec. No. 34) establishing a March 15, 2006 deadline to disclose expert witnesses and a May 1, 2006 deadline for depositions of experts.

8

signature on the application was valid.  If Allstate reasonably concluded that Grubbs' signature was valid, then it had a reasonable basis for concluding that Grubbs made the false statements contained in the application.

It would be reasonable as a matter of law for an insurance company to conclude that an applicant's signature is valid when confronted with no evidence to the contrary.  Here, however, according to Allstate, in Grubbs' sworn testimony that she gave after filing the claim and before Allstate denied it, when asked if the signature on the application was hers, Grubbs stated, "I don't know, it could be, man, that's nasty looking.  It don't look like my signature, but I'm sure I got the insurance, but that don't look like – I'm not going to say that it's. . . ." In the same examination, Grubbs stated, "I know my signature just doesn't even look like my signature, which this really don't – I mean I was just nervous that day. . .but, you know, my signature is a lot prettier than that usually."  (Rec. No. 28, Reply at 4-6).

Grubbs states in her affidavit that, after this testimony, an Allstate representative asked her to sign her name five times and then compared the signatures on the two documents.  (Rec. No. 26, Response, Grubbs Aff. ¶ 4). Allstate does not dispute this. Thus, prior to denying Grubbs' claim, it appears that Allstate was aware that Grubbs contested the validity of the signature.  There is no evidence in the record as to how Allstate ultimately determined that the signature, was, in fact, Grubbs' signature. Thus, the court cannot find that, as a matter of law, Allstate had a reasonable basis for concluding that Grubbs did, in fact, sign the application, thereby making the misrepresentations contained in it.  Accordingly, Allstate's motion for summary judgment on Grubbs' bad faith claim must be DENIED.

9

**V.      CONCLUSION.**

For all the above reasons, the Court hereby ORDERS as follows:

1)      Allstate's Motion for Partial Summary Judgment (Rec. No. 19) regarding the claims made by the Plaintiff, Britt Anglian, is GRANTED and all claims by Anglian are hereby DISMISSED;

2)      Allstate's Motion for Extension of Time to File the Affidavit of Peggy Holland (Rec. No. 29) is hereby GRANTED;

3)      Allstate's Motion for Partial Summary Judgment (Rec. No. 24) regarding Grubbs' bad faith claim is DENIED.

This the 6th day of March, 2006.

**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**

10